## Case No. 363.

ANDERSON et al. v. The SOLON.

[1 Crabbe, 17.][1]

District Court, E. D. Pennsylvania. May Sessions, 1836.

SEAMEN—WAGES—FORFEITURE—SEIZURE OF VESSEL BY REVENUE OFFICERS—LIEN.

1. A libel will be sustained, though the vessel has made a second voyage since the cause of libel accrued, if, by her sudden departure, the prosecution of the claim was previously prevented.

2. Where a vessel is seized by revenue officers, the mariners discharged, the vessel sold by her owner during seizure, and afterwards liberated, the lien of the mariners for wages is not destroyed.

[Cited in Carter v. The Morrisania, 3 Fed. 925.]

[See Swift v. The Frank and Willie, 45 Fed. 488.]

[See note at end of case.]

---

[1][Reported by William H. Crabbe, Esq.]

3. It is not such embezzlement as will forfeit a mariner's wages, if he sells part of the cargo, by the direction of the mate, during the permanent absence of the master, in order to procure necessary provisions for the vessel.

In admiralty. This was a libel [by Thomas and Wolley Anderson against the sloop Solon, James Holt, master] for wages. The libellants shipped on board the sloop Solon, at Philadelphia, on the 21st September, 1835, to ply between that port and New York, at twelve dollars per month. In January, 1836, the sloop sailed from New York for Philadelphia, but was obliged to go into harbor, on the coast of New Jersey, till the navigation of the Delaware should be open: it being then obstructed by ice. While in harbor, the captain left the sloop, taking her papers with him. During his absence, the provisions having become exhausted, the mate directed one of the libellants to sell a portion of the cargo, to procure food. The sloop was subsequently seized, by the custom-house officers, for want of the papers which were in the captain's possession, he still being absent. While under seizure, she was sold by her owner, and afterwards liberated. The new owner brought her to Philadelphia, when the libellants, who had been discharged at the time of the seizure, issued a summons to her master, which could not be served, on account of her immediately sailing for New York. On her return to Philadelphia, she was attached, in this suit, on the 14th April, 1836. The libellants claimed full wages, from the date of their shipping to their discharge at the time of seizure.

On the 13th May, 1836, the case came on for hearing, before Judge HOPKINSON. It was argued by Grinnell for the libellants, and by Bulkley for the respondent.

Bulkley for respondent.

The misfortunes of the vessel prevented the payment of wages; the seamen's lien was destroyed by the sale under seizure, as well as by her having made a second voyage before she was libelled; and the libellant, Thomas Anderson, had forfeited his wages by embezzlement of the cargo.

Grinnell, in reply.

If there are no provisions on board, the seamen may leave the vessel, and it will not be desertion followed by forfeiture of wages. The sloop was seized for the master's misconduct, and the voyage broken up by no act of the mariners. The libellant, Thomas Anderson, was not liable as for embezzlement, because he received the goods sold from an agent of the owner—the mate; and, also, because they were sold to procure necessary provisions. The sale of the vessel did not destroy the libellant's lien for wages. Abb. Shipp. 1S1. Process was issued the first time she came to the port where the libellants shipped. See Blaine v. The Charles Carter, 4 Cranch, [8 U. S.] 328.

On the 20th May, 1836, HOPKINSON, District Judge, decreed in favor of the libellants for the full amount of wages claimed, and costs.

[NOTE. A vessel bound from Baltimore to the northwest coast of America stopped on the coast of Chili, pursuant to sealed instructions from the owners, for the purpose of engaging in illicit trade. She was seized, and, with her cargo, sold by the government, and the officers and crew imprisoned, some of them for nearly four years. Finally they were released, and returned to the United States, and the proceeds of the sale of the vessel and cargo deposited to the credit of its owners. The court, by Mr. Justice Story, held that the seamen, having had no knowledge of the illicit trade intended, were entitled to a lien on the proceeds of the sale for their wages from the time of their departure till their return to the United States, notwithstanding the seizure and sale of the ship and consequent discontinuance of the voyage. Sheppard v. Taylor, 5 Pet. (30 U. S.) 675.]